## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LOUISE MILLER WHITE
5805 Rehling Street
Temple Hills, MD 20748

   Plaintiff,

v.             Case No. _____

Equifax Information Services, LLC
<u>Serve</u>:  CSC-Lawyers Incorp Srvc. Company
   7 Saint Paul Street, Suite 820
   Baltimore, MD 21202

Experian Information Solutions, Inc.
<u>Serve</u>:  Corporation Trust Incorporated
   2405 York Road, Suite 201
   Lutherville Timonium, MD 21093

TRANS UNION, LLC
<u>Serve</u>:  CSC-Lawyers Incorp Srvc. Company
   7 Saint Paul Street, Suite 820
   Baltimore, MD 21202

Nissan Motor Acceptance Company LLC
<u>Serve</u>:  CSC-Lawyers Incorp Srvc. Company
   7 Saint Paul Street, Suite 820
   Baltimore, MD 21202

OneMain Financial Group, LLC
<u>Serve</u>:  Corporation Trust Incorporated
   2405 York Road, Suite 201
   Lutherville Timonium, MD 21093

REGIONS BANK
<u>Serve</u>:  CSC-Lawyers Incorp Srvc. Company
   7 Saint Paul Street, Suite 820
   Baltimore, MD 21202

Greensky Servicing, LLC
<u>Serve</u>:  Corporation Trust Incorporated
   2405 York Road, Suite 201
   Lutherville Timonium, MD 21093

Portfolio Recovery Associates, LLC
<u>Serve</u>:  CSC-Lawyers Incorp Srvc. Company
   7 Saint Paul Street, Suite 820
   Baltimore, MD 21202

   Defendants.

## <u>COMPLAINT AND JURY DEMAND</u>

The Plaintiff, Luise Miller White (hereinafter "Ms. White"), by and through undersigned counsel, files suit against the named defendants, and alleges as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      This is an action for actual, statutory and punitive damages, brought pursuant to Federal Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") and Federal Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

## <u>JURISDICTION & VENUE</u>

2.      This Court has jurisdiction and venue of the matters asserted herein., jurisdiction is appropriate for the following reasons:

(a)     on the basis of diversity of citizenship and in light of the amount in controversy is in excess of $75,000 exclusive of costs, *see* 28 U.S.C. § 1332;

(b)     the matters asserted herein present a mix of federal and state questions, *see* 28 U.S.C. §§ 1331 & 1367; and

(c)     venue is proper pursuant to 28 U.S.C. § 1391(b)(2) for Plaintiff resides in this District and the conduct complained of occurred in this District.

## <u>PARTIES TO THIS ACTION</u>

3.      Plaintiff is an individual and a "person" or "consumer" as defined in 15 U.S.C. § 1681a(b) and 15 U.S.C. § 1692a(3), respectively.

4.      Equifax Information Services, LLC ("Equifax") prepares and furnishes consumer reports and is a credit reporting agency (CRA) as defined at 15 U.S.C. § 1681a(f).

5.      Experian Information Solutions, Inc. ("Experian") prepares and furnishes consumer reports and is a credit reporting agency (CRA) as defined at 15 U.S.C. § 1681a(f).

6.      Trans Union, LLC ("TransUnion") prepares and furnishes consumer reports and is a credit reporting agency (CRA) as defined at 15 U.S.C. § 1681a(f).

7.      Nissan Motor Acceptance Company LLC ("Nissan") is a retailer seller of automobiles, including variety of new and used cars, trucks, vans, and SUVs.

8.      OneMain Financial Group LLC ("OneMain") provides financial services that include unsecured and secured personal loans.

9.      Regions Bank ("Regions") is a financial institution that provides retail and commercial banking, trust, securities brokerage, mortgage and insurance products and services.

10.     Greensky Servicing, LLC ("Greensky") is a consumer finance company that provides consumer loans and credit plans for home improvement, and specialty retail sectors.

11.     Portfolio Recovery Associates, LLC ("PRA") buys and/or manages past-due accounts and is a debt collector as defined at 15 U.S.C. 1692a(6).

## FACTUAL ALLEGATIONS

12.     Ms. White requested her credit file from the CRA defendants.

13.     Trans Union provided Ms. White with her credit report, but Equifax and Experian refused to provide Ms. White with any information.

14.     Appearing on Ms. White's Trans Union credit report were three accounts and a collection that did not belong to her.

15.     The furnishers of those four debts were Nissan, Regions, OneMain and PRA (hereinafter, the "Furnisher Defendants").

16.     Upon information and belief, the Furnisher Defendants are also reporting these debts to Ms. White's credit reports with Equifax and Experian.

### Nissan Auto Loan Account

17.     Nissan is reporting that Ms. White is a co-signor on a $35,000 automobile loan that was opened in January 2017 and charged off with a $15,259 balance after receiving the last payment in November 2021.

18.     Ms. White, who is over 90-years old and does not drive, had no knowledge that this loan was opened, much less that she was being included on the loan as a co-signer.

19.     Nor has Ms. White reviewed or signed any loan documents with Nissan.

20.     Any documents containing Ms. White's signature or information was the result of fraudulent activity and/or identity theft.

## Regions Installment Loan Account

21.     Regions is reporting that Ms. White opened an unsecured installment loan in the amount of $4975 with some other person in February 2018 and that the account was s charged off with a $2,667 balance after receiving the last payment in April 2023.

22.     Ms. White had no knowledge that this loan was opened in her name and has not reviewed or signed any loan documents from Regions.

23.     Any documents containing Ms. White's signature or information was the result of fraudulent activity and/or identity theft.

## OneMain Installment Loan Account

24.     OneMain is reporting that Ms. White opened a secured installment loan in the amount of $24,532 with some other person in October 2022.

25.     Presumably, the collateral securing the OneMain loan is an automobile because the report indicates that the payment status of the account is "Voluntary Surrender."

26.     The OneMain account indicates that there are monthly payments being made on the account, but the balance has somehow increased to the current balance of $24,585.

27.     OneMain's reporting is contradictory in that the payment history clearly demonstrates that monthly payments are timely being made and that loan is not in behind or in default but the payment status indicates that loan is behind and/or no payments are being made.

28.     Ms. White had no knowledge that this loan was opened in her name and has not reviewed or signed any loan documents from OneMain.

29.     Any documents containing Ms. White's signature or information was the result of fraudulent activity and/or identity theft.

**PRA Collection Account**

30.     PRA is reporting that Ms. White had an unpaid debt with HSBC Bank Nevada NA in the amount of $265.

31.     According to the report, the collection is set to be removed Ms. White's report in December 2024, which suggests that the account became delinquent in December 2017.

32.     However, PRA is reporting that the account was opened in September 2018.

33.     Needless to say that is patently inaccurate and/or inconsistent to report that the an account was opened nine months *after* the account became delinquent.

34.     If the December 2017 date refers to the date that PRA opened the account, then the report omits the date that original account was opened and is incomplete.

35.     Along with the omission of the origination date of the account is the account number for the original account.

36.     Without the origination date and account number, Ms. White cannot investigate the account with HSBC Bank Nevada.

37.     Either PRA provided incomplete information to Trans Union and/or Trans Union received the origination date and account number but failed to provide all the information in Ms. White's credit file upon receiving Ms. White's request for such information.

38.     Ms. White had no knowledge that there was a HSBC Bank Nevad account in her name and she has not reviewed or signed any loan documents with HSBC Bank Nevada.

39.     Any documents containing Ms. White's signature or information was the result of fraudulent activity and/or identity theft

40.     PRA is notorious for collecting debts that it does not own or debts that do not exist or debts that belong to a different debtor.

41.     Upon information and belief, PRA did not acquire an HSBC Bank Nevada account in the name of Ms. White.

**Ms. White Credit Disputes**

42.     Ms. White had a son, Joseph White, who she suspects opened the accounts.

43.     Unfortunately, Mr. Joseph White passed away in September 2023.

44.     Ms. White submitted dispute letters to the CRAs, and those letters notified the CRAs that she was the victim of identity theft—i.e. the accounts were not hers and likely opened fraudulently by her son.

45.     In turn, the CRAs notified the Furnisher Defendants that Ms. White disputed the accounts on the grounds that the accounts were not hers and opened in her name without her authorization, approval or knowledge.

46.     The CRAs did not investigate Ms. White's dispute before they forwarded her dispute to the Furnisher Defendants.

47.     The Furnisher Defendants responded to Ms. White's dispute by merely verifying Ms. White's name, social security number, date of birth, or current address, and did not look into who submitted that information to open the account.

48.     In other words, the Furnisher Defendants did not properly treat Ms. White's dispute as an identity theft dispute or fraudulent account claim.

49.     Had the Furnisher Defendants treated Ms. White's dispute as an identity theft dispute and investigated the legitimacy the account file itself—did Ms. White provide the

information or did someone submit her information without her knowledge or approval—then they would have discovered that Ms. White did not jointly open or co-sign any of the accounts.

50.     Although identity theft disputes require a furnisher to investigate who submitted application and/or how the application was submitted, the Furnisher Defendants have enacted a policy that limits every investigation, including investigations of identity theft dispute, to merely confirming that the CRAs are consistently reporting the information in the Furnisher Defendants' files regardless of whether the file was fraudulently opened.

51.     Essentially, the Furnisher Defendants did nothing more than compare the points of data provided by the CRAs with their own records, thereby completely ignoring the nature and substance of Ms. White's dispute, which challenged the accuracy of those records.

52.     Indeed, the Furnisher Defendants did not even review Ms. White's dispute letter and relied solely on the electronic dispute form provided by the CRAs.

53.     The CRAs are known to mischaracterize consumers' dispute and a reasonable investigation must include the review of the consumer's dispute letter.

54.     Here, the CRAs failed to adequately characterize Ms. White's dispute when they attempted to translate her dispute into an electronic dispute form.

55.     Although the CRAs forward the consumer's dispute letter along with their electron version of the dispute, the CRAs are aware that the Furnisher Defendants do not review the consumer's dispute letter.

56.     Here, the CRAs blindly accepted the Furnisher Defendants' representation that they verified the accuracy and completeness of the disputed information despite knowing that the Furnisher Defendants do not properly investigate identity theft disputes and do not review the consumer's dispute letter.

57.     Both the CRAs and the Furnisher Defendants have implemented the foregoing unreasonable procedures because quick, perfunctory investigations keep their costs low—as the cost of defending lawsuits would be greatly outweighed by the cost of implementing reasonable investigation procedures.

## COUNT ONE: VIOLATION(S) OF 15 U.S.C. § 1692

58.     Plaintiff incorporates paragraphs 1-57 by reference.

59.     Defendant PRA violated 15 U.S.C. § 1692 in multiple ways, including but not limited to:

      a.     falsely representing Plaintiff had an unpaid debt with HSBC Bank Nevada;

      b.     falsely representing that PRA acquired a debt in Plaintiff's name; and

      c.     reporting Plaintiff was indebted to PRA while knowing that Plaintiff did not have a debt with PRA.

60.     By reporting the false debt to the CRAs, the Plaintiff's credit score has been substantially lowered and prevented and/or hampered her from refinancing her mortgage.

61.     Plaintiff incurred pecuniary costs and/or expense in her attempts to correct the PRA's collection efforts and has been distressed by PRA's continual deceptive debt collection and false credit reporting.

62.     Defendants PRA's conduct was the proximate cause of Plaintiff's injuries, rendering PRA liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT TWO: VIOLATION OF 15 U.S.C. § 1681e(b)

63.     Plaintiff repeats the allegations contained in paragraphs 1 through 57 and incorporated them as if specifically set forth at length herein.

64.     Section 1681e(b) mandates that CRAs report consumer information with ***the maximum possible accuracy.*** In other words, the CRAs' reporting must be more than just accurate, it must be done to near perfection and without any inaccuracies.

65.     The CRA Defendants have published credit reports—containing inaccurate information from the Furnisher Defendants—to third parties that have inquired about Plaintiff's credit worthiness.

66.      Had the CRA Defendants developed and implemented reasonable procedures for reporting maximum accurate information, they would have prevented the inaccuracies from being inserted into Plaintiff's credit reports.

67.     The Furnisher Defendants are not reliable sources of information for credit reports and the CRA Defendants should not have blindly parroted the information that they received from the Furnisher Defendants.

68.     The CRA Defendants are keenly aware of the shortcomings of their procedures, but nonetheless they gladly take the risk of violating § 1681e(b) for their own economic benefit.

69.     Based on the foregoing allegations in paragraphs 63-68, the CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained for Plaintiff.

70.     As a result of the CRA Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: pecuniary expenses, loss of credit opportunity, damages to reputation, frustration, embarrassment, humiliation and other mental and emotional distress.

71.     The violations by the CRA Defendants were willful, rendering them individually liable for statutory and punitive damages, actual damages, costs and attorney's fees pursuant to

§ 1681n. In the alternative, the Defendant was negligent, which entitles Plaintiff to recover actual damages, statutory damages, costs and attorney's fees pursuant to § 1681o.

**COUNT THREE: VIOLATION OF 15 U.S.C. § 1681i(a)**

72.     Plaintiff repeats the allegations contained in paragraphs 63 through 71 and incorporated them as if specifically set forth at length herein.

73.     Section 1681i(a)(1) mandates that a credit reporting agency investigate a consumer's dispute and report the results of the reinvestigation.

74.     Section 1681i(a)(2)(A) mandates that a credit reporting agency provide notice of the consumer's dispute to the furnisher of the disputed information.

75.     Section 1681i(a)(4)(A) relates to section 1681i(a)(1) and mandates that the credit reporting agency review and consider all the relevant information provided by the consumer during the credit reporting agency's investigation.

76.     Section 1681i(a)(5)(A) mandates that a credit reporting agency delete or modify the disputed information that has been found to be inaccurate or incomplete or unverifiable.

77.     The CRA Defendants have virtually no policies, practices or procedures to investigate a consumer's dispute, much less review and consider the relevant information provided by the consumer as a part of their reinvestigation.

78.     Although the CRA Defendants require them to *both* investigate the consumer dispute pursuant to section 1681i(a)(1) and forward notice of the dispute to the furnisher pursuant to section 1681i(a)(2), the CRA Defendants' policies, practices and procedures are designed only to comply with section 1681i(a)(2).

79.     Despite the plain language of section 1681i(a)(1)'s language to conduct a reinvestigation, the CRA Defendants' policies, practices and procedures are to rely on the furnisher's response instead of conducting their own reinvestigation.

80. Making matters worse, the CRA Defendants do not require that their furnishers perform a reasonable investigation of the consumer's dispute.

81. In fact, the CRA Defendants are fully aware that the furnishers regularly perform superficial reviews of credit disputes *instead* of reasonable investigations.

82. Like the CRA Defendants, the furnishers do not consider and review the consumer's dispute letter when responding to a consumer dispute.

83. Despite knowing that furnishers generally do not consider the consumer's dispute in their investigations, the CRA Defendants rely on the furnishers' response as satisfaction of their obligation to *investigate* the dispute under § 1681i(a)(1).

84. Further, the CRA Defendants fail to accurately describe the dispute when forwarding notice of the dispute to the furnishers. The CRA Defendants' failure to accurately convey the dispute violates § 1681i(a)(2) because such failures result in the omission of relevant information for the furnishers to consider in their investigations.

85. Because the CRA Defendants rarely, if ever, conduct an investigation to determine the disputed information is accurate or complete, the CRA Defendants regularly fail to establish or confirm the accuracy of the disputed information as required by § 1681i(a)(5)(A).

86. The CRA Defendants are keenly aware of the shortcomings of their procedures, but nonetheless they gladly take the risk of violating § 1681i(a) for their own economic benefit.

87. Here, the CRA Defendants did not investigate Plaintiff's dispute and blindly parroted the Furnisher Defendants' dispute results, which the CRA Defendants knew falsely claimed the disputed information was verified as accurate and complete.

88. Based on the foregoing allegations in paragraphs 72 through 87, the CRA Defendants violated §§ 1681i(a)(1)-(5) by failing to properly respond to Plaintiff's disputes.

89.     As a result of the CRA Defendants' foregoing violations, Plaintiff suffered actual damages, including but not limited to: out-of-pocket and/or pecuniary costs, loss of credit opportunity, damage to reputation, frustration, embarrassment, humiliation and other distress.

90.     The violations by the CRA Defendants were willful, rendering them individually liable for statutory and punitive damages, actual damages, costs and attorney's fees pursuant to § 1681n. In the alternative, the CRA Defendants were negligent, which entitles Plaintiff to recover actual damages, statutory damages, costs and attorney's fees pursuant to § 1681o.

## COUNT FOUR: VIOLATION(S) OF 15 U.S.C. § 1681s-2(b)

91.     Plaintiff repeats the allegations contained in paragraphs 1 through 57 and incorporated them as if specifically set forth at length herein.

92.     Section 1681s-2(b) mandates that a furnisher, among other duties, investigate and modify inaccurate information.

93.     The Furnisher Defendants violated 15 U.S.C. §1681s-2(b)(1)(A) & (B) by failing to fully and properly investigate and/or respond to Plaintiff's disputes that were forwarded to them by the CRA Defendants.

94.     The Furnisher Defendants violated 15 U.S.C. §1681s-2(b)(1)(C) & (D) by failing to report accurate information after completing their investigation.

95.     The Furnisher Defendants violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to delete inaccurate, incomplete or unverifiable information.

96.     On information and belief, the Plaintiff alleges that the Furnisher Defendants rarely, if ever, consider the merits of the dispute and never actually investigate the matters complained of. Instead, they just regurgitate their prior reportings as long as the ownership or identification information matches up regardless of whether the dispute pertained to the ownership of the debt.

97.     The Furnisher Defendants' policy to simply data match information that they previously reported to the CRAs and/or data match the information in their records with the information currently be reported to the CRA is unreasonable and a willful violation of the FCRA.

98.     The Furnisher Defendants have received many disputes and complaints from consumers because they furnish inaccurate information to the CRAs on a regular basis, and they fail to conduct reasonable investigations and correct their inaccuracies.

99.     The Furnisher Defendants are quite aware that their investigation procedures are cursory and superficial, but nonetheless they gladly take the risk of violating § 1681s-2(b)(1) for their own economic benefit.

100.    As a result of the Furnisher Defendants violations of §§ 1681s-2(b)(1)(A)-(E), Plaintiff suffered actual damages, including but not limited to: loss of credit, out of pocket expense connected with attempting to correct her reports, damage to credit profile and reputation, embarrassment, humiliation and other mental and emotional distress.

101.    The violations by the Furnisher Defendants were willful, rendering them liable for punitive damages pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

102.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the Furnisher Defendants pursuant to 15 U.S.C. §1681n and §1681o.

**WHEREFORE**, your Plaintiff demands judgment for actual, statutory and punitive damages against all Defendants; for her attorney's fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

## DEMAND FOR TRIAL BY JURY

103.    Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 10, 2024                         Respectfully submitted,


  /s/ Jeffery W. Styles
Jeffery W. Styles, Esq. Bar #20659
Washington Legal Group, LLC
1001 Connecticut Ave NW #1138
Washington, DC 20036
Tel: (202) 999-2736
E-mail: jstyles@washlegal.com

*Counsel for Plaintiff Charnita Proctor*